It's nice to have former wall clerks in the area of Washington. Yeah. She clapped her hand and he clapped her hand. Yeah. Yes. Okay, the next argued case is number 162267, Prasad v. Office of Personnel Management. Mr. Sterin. Thank you, Your Honor, and good morning. And may it please the court, my name is John Sterin. I'm here on behalf of the petitioner, Dr. Prasad. And this is an appeal from an adverse ruling of the Merit Systems Protection Board upholding a decision of the Office of Personnel Management denying Dr. Prasad benefits under the Civil Service Retirement System. What exactly is the harm that Dr. Prasad suffered from the mistaken coding under CSRS? There is a huge difference between a CSRS annuity and what the government is trying to give Dr. Prasad for retirement. Are there additional monthly payments or benefits? There are significance. One is an annuity with a monthly payment. The second, which is what they're trying to force on him, is essentially his accumulation of submitted funds to CSRS with an incremental increase over the 25 years that he was employed. So it's essentially an annuity. Where is that reflected in the record, the difference? Your Honor, I don't believe it is reflected in the record. Okay. Dr. Prasad didn't have deductions from 1989 until 2009 for the DC retirement program alongside the CSRS deductions, correct? That's a correct statement. During that time period, the only deductions were CSRS deductions. Your Honors, I believe that the Board made three substantial and material errors that I believe require reversal of the Board's denial. I think, first, the Board simply ignored the special coverage rules that an employee like Dr. Prasad was entitled to. And those special coverage rules applied specifically to an employee that was employed by the federal government at St. Elizabeth Hospital before 1987, before the time the hospital transitioned from federal control to control by the District of Columbia. Was Dr. Prasad covered by FERS before the transition? I believe he was, and I believe that the Board essentially concluded that he was. Well, how do you respond to the government's argument that he couldn't have been covered by FERS because his appointments were temporary with no retirement coverage prior to October 1, 1987? Yes, Your Honor. The appointment actually was for an accepted appointment for a term of three years. The government's argument is that that accepted appointment is not covered by CSRS or someone in that position is not entitled to CSRS. Those same exceptions do not apply to someone who is covered by the federal, by FERS. And that's what we've argued. There is a very limited number of exclusions for employees that are covered by FERS. And we start out with a proposition that every employee is covered by some sort of retirement system unless excluded by law or regulation. And so, to directly answer the question, they, again, are focusing on CSRS. And that, I believe, is what the Board did below, which I believe was inappropriate. If we look at whether or not he's... Would a temporary appointment qualify under FERS? It does. His accepted appointment... I think the government disagrees with you on that point, I believe. In the brief, Your Honor, I believe they only talk about whether or not he's covered by CSRS, not FERS. And I believe there's a distinction, a significant distinction, between the exceptions that would apply to give someone benefits under CSRS versus the exceptions under FERS. Well, you note that the OPM handbook for St. Elizabeth's transition states that an employee must have been subject to CSRS on September 30, 1987. The handbook actually says, must be subject to CSRS for FERS as of the time of the transition. And that's the exact language of the handbook. It's not... You don't argue that he was covered... That he had five years of federal employment before October 1, 1987. Before the transition? No, Your Honor. Dr. Prasad started his employment with the federal government in 1984. The transition occurred in 87. How do you argue that he would have been subject to CSRS on September 30, 87? Because the way the special coverage rules read, if you are in a position that would have been covered by either CSRS or FERS, and Dr. Prasad's position would have been covered by FERS at the time of transition, he gets to continue that coverage after the transition. And the reason why it converts from FERS to CSRS after the transition is because employees that went from federal employment to employment by the District of Columbia could not keep FERS. It had to stay only as a federal employee. So it transitioned from FERS to CSRS. And that's exactly what the special coverage rules were intended to cover. He is in a unique situation, a very odd situation. I don't think it's quite frequent that there would have been employees in that position. But he was one of those employees, and he was subject to that, and he should be allowed to get the benefit of that. There are two other issues that I believe are worth meriting in terms of the errors that the board committed. The first is the number of creditable services. I think the core of the government's argument is that because he had non-permanent appointments, he wasn't covered by FERS. In reading the briefs, I don't believe they talk about FERS at all in their briefs in terms of coverage. I believe the cases they only cite to are all CSRS cases. I'm looking at page 14 of the red brief. Dr. Persaud merely implies that he was eligible for federal retirement coverage. To be fair, Dr. Persaud is correct that if he was covered by FERS prior to transition, he may have been able to retain CSRS benefits. Dr. Persaud's non-permanent appointments, however, did not entitle him to a federal annuity, and he has offered no support for the proposition that temporary term appointments qualify as covered service. They did. I didn't quite read it that way, but to be fair, if that's the way they've read it, the CSRS and FERS handbook has an adequate description of what the exclusions are for FERS versus CSRS. We have cited to our brief the position in the handbook that the exclusion for FERS as opposed to CSRS are much different, that they are not the same exclusions, and they are much more refined. In fact, there appears to be only one real significant exclusion. That's at section 10A1.3-5 of the handbook. It talks about temporary employees serving under appointments other than provisional appointments of one year or less. Talk about 12A4.1-1E. I'm sorry, Your Honor, can you say that again? Sure. 12A4.1-1E. 12A4.1-1E is basically the crux of the special coverage rules. That talks about, and that's precisely what I think we relied upon, that talks about the fact that if you are an employee like Dr. Prasad, who would have been covered by FERS before the transition. Would have been. Yes, Your Honor. Would have been. But it doesn't say he was. Well, we believe, I go back to the proposition that every employee is covered by retirement penalty unless there is an explicit exclusion by law or regulation. And 5 U.S.C. 8333, which is a statutory service requirement. And it does not, my read of that is that it does not prohibit an employee who is serving as an accepted term for three years from being eligible for FERS. It does talk about the exclusions for CSRS. And I believe that's in part what the board's error was, and I believe that's in part what the respondent keeps harping upon, which is that they are looking at exclusions for CSRS as opposed to exclusions for FERS. And that's where I come back to that there is not an exclusion that would be applicable to Dr. Prasad. You know, you're not addressing what bothers me about the government's case, which is their erroneous continuing statements to Dr. Prasad in his payslips. Well, I don't know if that does you any good, really, but it sort of knots the stomach when one reads it. This whole matter has sort of knotted the stomach, Your Honor. We have had trouble since the beginning. We have a sort of a parallel proceeding going on in the District of Columbia addressing those type of statements that are in his payslips. But I don't believe that that was actually part of this proceeding. It's not. Okay. Thank you. Let's hear from the other side, Mr. Stern. Good morning. May it please the Court. I want to start by addressing a question from the Court. The question was directly, was Dr. Prasad covered by FERS? And the answer from Dr. Prasad's counsel was, quote, I believe he was. Now, as we make clear in our brief, Dr. Prasad has only ever implied that he was covered by FERS. He's never actually come out and said he's covered by FERS, or he's never taken this argument a step further and developed it and said these are the requirements for FERS and this is what you would have to do to meet it. Because if he did take that next step, it would be clear that he's not subject to FERS. Now, if we look at the handbook and if we look at the regulations, they make clear that to be eligible for FERS, not only do you have to have the five-year credible service requirement, you also have to be in a position that's subject to Social Security withholding. And Dr. Prasad certainly was not. In fact, there was a – Can you give us some sight here to regulations and statutes? Sure. It seemed to me that you were – if Mr. Dr. Prasad were correct, that the accepted three-year appointment qualified for FERS, then he'd be in business, right? I don't think that's correct, that he would be in business, because, again, it would only be three years, not five years. Well, let's assume he had five years. If he had the five years, right, and so – The absence of the five years. The absence of the five years, but that's just one element of FERS coverage. And the second is not subject to Social Security. Exactly. And that can be found at 5 CFR Section 842.103. It can also be found at the handbook. I mean, just to – Yeah, cite us to the – The handbook. I mean, I'll – we can go to Chapter 10 of the OPM handbook, and this is something that Dr. Prasad's counsel referred to in his reply brief. He talks about the limited exclusions to FERS coverage versus CSRS coverage. Well, there's an omission from the brief, Dr. Prasad's reply brief, because the very first line, if we look at page 24 of Chapter 10, I apologize. Where is it in the appendix? Section 10A1. Appendix, sorry. I'm sorry? Is it in the appendix? Oh, the OPM handbook is not in the appendix. You don't have that? No. But I do have the regulation, and I do have the actual page number for Chapter 10. It's page 24, excuse me, Section 10A1.3-5. And again, these were cited – this page was cited by Dr. Prasad in his reply brief. Now, this page, what it does is it talks – it's a quick reference, and it discusses the limited exclusions from FERS coverage, because obviously there are more exclusions for CSRS coverage than for FERS coverage. But in the very first sentence, it says that the employee has to be subject to OASDI taxes, otherwise known as Social Security taxes. So again, Your Honor, to address your question and your point, not only would he have to meet the five-year credible service requirement, he would also have to be in a position subject to Social Security withholding. Was he subject to Social Security withholding?  In fact, this is actually in the record. Your Honor, if we go to – So if we go to page 64 of the Joint Appendix – 64? 64, Your Honor. 64, thank you. This is 64 and 65. So let's first look at 65. Okay. It's hard to see. I apologize. You can see that these are poor-quality originals. But in the center of the page 65, we have a box right down toward the middle that says retirement, box 29. And there it says 11 FICA, otherwise known as Social Security. If we look at page 64, this is actually a correction. It's a personnel form that corrects the page 65 record and changes his coverage from 11 FICA to 12 none. This also was referenced on page 59. What was the occasion of that change? The occasion of the change, as we understand it, is it was a mistake, another mistake by the D.C. government. And this time around, they had improperly coded him at that time as being subject for Social Security withholding. When he was not, if we look at page 59 – What's the date on those two documents? So the date, and again, these are – It's date of action. So the date of action is 1988. But the effective date is 1987. Right, right, right. So we can see it looks like this is February 1988. The personnel record from appendix 65 is November 20, 1987. So my best guess on this is three months after they made this mistake, they corrected it. And if we look at page – This is better than 20 years. I agree, Your Honor. And if we look at page 59, this is a letter to Dr. Passad from August 2009. If we look at counting down from the top, one, two, three, four paragraphs in, we have a sentence that begins toward the middle of the page. Initially, he was erroneously covered by FICA. However, a correction to the record on February 17, 1988, changed his coverage from FICA to none. So, again, if we take Dr. Passad's argument even one step further. That's on page 59, you're saying? 59, Your Honor. I see that, yes. Initially. I see it. So, again, if we take these statements, these arguments, one step further than just a blanket statement, yes, I was covered. We look, and no, he doesn't meet either requirement, the five-year service requirement or the withholding for Social Security requirement. So, you know, any way you look at this, any way you slice it, whether you look at CSRS benefits or FERS benefits, Dr. Passad was just ineligible. And while it's unfortunate what happened to him, that a D.C. government employee made a mistake 28 years ago and improperly coded him, that mistake cannot override the statutory requirements for eligibility to either federal annuity. And so that's our bottom line. And we think at the end of the day, even though there's a lot of talk about exclusions, he's just not eligible, and he wasn't eligible, and that's clear from the record. Somewhere, I know you can't assert estoppel against the government. I mean, that's a general principle. But somewhere it seems to me he has something to say about how he planned his life for 28 years and was then faced with being told, nope, sorry, we made a mistake. You used the word unfortunate in your brief. Well, I'd certainly agree with that. But, of course, your argument is the law is the law. There's my argument. And one of the reasons, Your Honor, why I included the Yancey case from the District of Columbia was just to say that. Yeah, why did you include it? I included that for one thing. One, because it had really great language that I could use in my brief about how the D.C. government could not bind the federal government to. But the plaintiff there was hired by St. Elizabeth after he had transferred. Well, with regard to the special coverage rules, unfortunately for Dr. Prasad, because he was just a medical resident in 1987, he didn't have any retirement coverage. When he started working in 1989, it was as if he had never worked for St. Elizabeth's prior to that because he doesn't get any benefit from the special coverage rules. I included Yancey because it was a psychologist like Dr. Prasad who came on board to St. Elizabeth's in 1989 and was promised to the peers at the time and then subsequently for 20 years through pay stubs that she would receive CSR's benefits, and she did not. And so that's why I included that. I think, unfortunately, this was a problem that was bigger than just Dr. Prasad's situation. But if we look at the record, and I'm not sure, again, what happened. But if we look, we have in Appendix 54, this is a bulletin. And this is from Theodore Thornton, Sr., who is the Director of Personnel for the Government of the District of Columbia from October 1st, 1987. If we look at the bottom of page 54 and the top of page 55, the D.C. government was very clear about who at St. Elizabeth's could qualify for federal retirement coverage. And, you know, I'll read from the top of 55 beginning with, quote, who has no prior employment with the district in a CSRS covered position is not eligible to retain or obtain CSRS coverage. Those employees would be covered by the District Retirement Benefit Program. So, again, even though there was a mistake in 1989, it was always clear what the federal government intended, and I also believe it was clear what the D.C. government intended. And, unfortunately, there was a mistake that was made. But at the end of the day, it appears that Dr. Prasad was eligible for the D.C. Defined Contribution Plan, and the contributions that he was deducted from his pay were given back to him, and they were applied to Social Security. So, at the end of the day, I think this is a really simple issue of just not being. You say it's applied to Social Security. How does that work? Well, I don't know how that works. I believe, Your Honor, that CSRS beneficiaries, those who are eligible for CSRS benefits per statute, do not have any Social Security deductions taken from their pay. And so once it was determined that Dr. Prasad was not eligible for CSRS benefits, they realized that, oops, he should have been paying into Social Security. He was not. So his refund of $67,000, the vast majority went to Social Security, and then the remainder was refunded to him. If there are no further questions, I'll forego the use of the rest of my time. Thank you, Mr. Rodriguez. Thank you, Your Honor. Mr. Sharon. Just very briefly, Your Honors, and to pick up from the last point, it's sort of a contention or an understanding that what's happened is Dr. Prasad is left with no retirement benefits. Everything that he had originally contributed gets sent back to Social Security, so other than Social Security, he apparently has no separate retirement benefits. I understand that Prasad… Does he not get something from the District of Columbia? He's… There is no annuity. There is nothing similar to or comparable to the CSRS annuity. That wasn't my question. Does he not get some… I'll repeat it verbatim. Does he not get something from the District of Columbia? He… I'm going to answer this way. Other than what he has contributed, no. What does that mean? I mean, isn't there a retirement program in the D.C. government? The D.C. government does have a retirement program, but that's not the way he is. And at the time of the conversion of St. Ed's from federal to the D.C., the understanding was, well, if you had a federal retirement plan before, you can carry that on, but if you don't, you're going to have to be on D.C.'s retirement plan. Correct. And he qualified for that, correct? Well, that's what the respondent says, that he qualifies for that, but his deductions throughout that entire time period were sent to CSRS and not to the D.C. I understand that, but can he buy into the D.C. retirement plan? Well, that's part of our underlying case pending before the District of Columbia is how he should be treated if he does not get CSRS benefits. I'm not quite sure… I think what Judge Wallach was asking is whether or not the door was closed to the doctor for a retirement plan, and I'm hearing you saying perhaps not entirely closed. And I'm not entirely sure what the ultimate outcome would be, depending on what happens here and what happens before the D.C. Superior Court, Your Honors. Just one fine point about the FICA issues. As a factual matter, in the record, Dr. Prasad was subject to FICA before he transitioned from as an employee of St. Elizabeth before it transitioned from federal control to the District of Columbia control, and that's at Appendix 22, 23, and 24. I understand the respondent likes to characterize those as mistakes, but that's in fact what the evidence has in the record. Corrected mistakes? I'm not sure how that is corrected. The way the respondent likes to see it corrected is that he was given back those FICA contributions as a result of these proceedings. That is part of the true-up that the government tried to give him his CSRS deductions plus the FICA contributions all back in a lump sum and say, here, let's go ahead and give it all to Social Security. My response to your question, Your Honor, is that no, I don't believe it is a retroactive correction. I believe that the evidence shows in the record that he was subject to FICA. Those are exhibits at Appendix 22, 23, and 24. That was, in fact, retroactive to March of 1987. Your Honor, if there are no other questions, I'll leave you with that. What about the five-year requirement that your adversary says your client didn't meet? Every year is creditable. He's got, I believe, 25 years of creditable service. I believe it's an incorrect statement to say that he had to have five years before the transition. There's no question, as a factual matter, he did not have five years. He started in 1984. The transition was in 1987. I believe it's an incorrect statement of law to say that he had to have the five years of creditable service before the transition. I believe that's a requirement at the end. The government's argument was that he had to do that in order to get himself qualified as of the date of transition, so that he could say, I'm in a federal program. I believe that's the argument today. I don't believe that's the argument in the brief. I believe they agreed with us that the board miscalculated the creditable service in the opinion, and I believe it's an incorrect statement to say that he actually had to have all the five years before the transition. I do believe he had to have the five years before he retired, and he did. But for purposes of qualifying for first reserves, he didn't have the five years before the transition.  Thank you. Any more questions? Thank you. Thank you both for your cases and your submissions.